1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  LILIA ALI, on behalf of herself and all            Case No.  1:19-cv-00959-JLT-BAM
    others similarly situated,
12                                                      **FINDINGS AND RECOMMENDATIONS
                        Plaintiff,                      REGARDING PLAINTIFF'S MOTION
13                                                      FOR CLASS CERTIFICATION**
            v.
14                                                      (Doc. 61)
    SETTON PISTACHIO OF TERRA
15  BELLA INC., a California corporation, and
    DOES 1 through 100, inclusive,
16
                        Defendants.
17

18          Plaintiff Laila Ali ("Ali") filed suit against a pistachio grower and processor, Setton

19  Pistachio of Terra Bella, Inc. ("Setton Pistachio"), alleging that Setton Pistachio violated

20  California wage-and-hour laws by enforcing an unlawful rounding policy that failed to

21  compensate hourly employees for all hours worked.

22          Currently before the Court is Ali's motion for class certification.  (Doc. 61.)  Setton

23  Pistachio opposes certification.  Both parties make evidentiary objections.  The motion was

24  referred to the undersigned for findings and recommendations, no hearing date was set, and the

25  matter was submitted on the papers.  (*See* Docs. 57, 60, 65.)  For the reasons explained below, the

26  Court will recommend that Ali's motion for class certification be denied.

27  ///

28  ///

                                                 1

**PROCEDURAL BACKGROUND**

Ali filed this lawsuit against Setton Pistachio on April 27, 2016, in Tulare County Superior Court, and filed a First Amended Complaint ("FAC") on September 2, 2016.  Setton Pistachio removed the action to this Court on July 12, 2019, under the Class Action Fairness Act.  (Doc. 1.)  The FAC raises six causes of action on behalf of Ali and a putative class:  (1) failure to pay overtime wages, Cal. Labor Code §§ 510, 1194; (2) failure to pay minimum wages, Cal. Labor Code § 1197 and applicable Wage Orders; (3) failure to pay separation wages, Cal. Labor Code §§ 201-203; (4) failure to furnish accurate wage statements, Cal. Labor Code § 226; (5) unfair competition law violations, Cal. Bus. & Profs. Code § 17200, et seq.; and (6) a claim for civil penalties under the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699.  (*Id.*)  The FAC is premised on Setton Pistachio's rounding policy.

On August 8, 2019, Ali moved to remand this action back to state court.  (Doc. 7.)  Setton Pistachio opposed the motion.  (Doc. 9.)  Following briefing, including an order for supplemental declarations, the district court denied the motion for remand on December 18, 2019.  (Doc. 37.)

On February 3, 2020, Ali again moved to remand the action to state court, which Setton Pistachio opposed.  (Docs. 42, 44.)  The motion was referred to the undersigned for findings and recommendations, which were issued on February 4, 2021.  (Doc 51.)  The district court adopted the findings and recommendations, over Ali's objections, and denied Ali's second motion for remand on March 30, 2021.  (Doc. 53.)

On July 2, 2021, the Court issued a Preliminary Scheduling Order, which set a briefing schedule for any class certification motion.  (Doc. 57.)

On February 25, 2022, consistent with the Scheduling Order, Ali filed the instant motion for class certification, along with a request for judicial notice.  (Docs. 61, 62.)  Setton Pistachio filed both an opposition to the class certification motion and evidentiary objections on April 29, 2022.  (Doc. 67.)  Ali filed a reply and evidentiary objections on July 1, 2022.  (Doc. 72.)  Thereafter, on July 8, 2022, Setton Pistachio filed objections to Ali's reply.  (Doc. 73.)  Ali responded on July 14, 2022.   (Doc. 74.)

1

**FACTUAL BACKGROUND**[1]

2        Setton Pistachio processes pistachios at its facility in Terra Bella, California, which is a

3    200-acre campus-like facility with approximately twenty buildings and multiple fields.  (Doc. 61-

4    1 at p. 9.)  Setton Pistachio employs workers in multiple departments, including production,

5    maintenance, shipping, quality assurance, pest control and administration.  (Doc. 67-2,

6    Declaration of Janice Fowler ("Fowler Decl.") at ¶ 10.)  Ali worked as an hourly employee for

7    Setton Pistachio, primarily as a hand sorter on a conveyor belt line.[2]

8        Relevant Work Shift Policies and Practices

9        Ali alleges that she and other similarly situated employees have not been paid, during the

10   relevant period, for all time worked, including overtime wages, as a result of Setton Pistachio

11   improperly rounding time worked by its employees. (*See* FAC at ¶¶ 11, 26.)  Setton Pistachio's

12   hourly employees are generally divided between both day and night-shift crews.   (Fowler Decl.

13   at ¶ 10.)  Employees are scheduled to work eight-hour shifts with a 30-minute meal period.

14   Employees use a finger/hand scan to clock-in and clock-out at a time clock.  During a portion of

15   the relevant class period, there were multiple time clocks located throughout the Terra Bella

16   campus.  (Doc. 61-1 at p. 10.)  The time clocks record the actual time entries, but for purposes of

17   payroll, Setton Pistachio utilizes a fifteen (15) minute rounding policy, where actual time entries

18   are adjusted to the nearest quarter hour.  No time entry is rounded up or down by more than seven

19   minutes, meaning that if an employee clocks in up to seven (7) minutes before their shift begins,

20   then the time entry is rounded up to the actual shift time, and if an employee clocks in up to seven

21   (7) minutes after their shift begins, then the time entry is rounded down to the actual shift time.

22   (Fowler Decl. at ¶ 3.)   Setton Pistachio's policy states "Employees should not work or punch in

23   more than seven (7) minutes before or seven (7) minutes after their shift."  (See Doc. 61-1 at p.

24

---

25   [1] The facts for purposes of this motion are derived from the Court's review of Ali's FAC and the parties'
     class certification briefing and evidence.

26

27   [2] The parties disagree on Ali's length of employment, which began November 2010, and continued at least
     through April 29, 2015.   Ali claims to have worked until August 17, 2016, (Doc. 61-2, Ex. 17, Declaration
     of Lilia Ali at ¶ 2), but Setton Pistachio's records appear to show that Ali only worked until April 29,

28   2015.  (Fowler Decl. at ¶ 6.)

11.)  Further, Setton Pistachio's policy provides that an employee may be disciplined for failing to report to work on time and/or leaving early.  (*Id.* at p. 12.)  Employees are not disciplined for clocking in within seven minutes after their shift start time or seven minutes before their end shift time.  (Fowler Decl. at ¶ 3.)

<u>Relevant Meal Break Policies and Practices</u>

Setton Pistachio maintains a policy to provide all employees with a 30-mimute meal period.  The rounding policy also is applied to meal break clock-outs and clock-ins.  (Fowler Decl. at ¶ 3.)  The time clocks are generally set so that an employee cannot clock out of lunch until taking a full 30-minute meal break.  If an employee uses a different time clock to clock back in to work than the clock they used to clock out for lunch, then the time clock will not block the clock in and will allow the employee to clock in before 30 minutes.  If those less than 30-minute lunch clock ins are flagged by the clock, payroll employees review those times and make a lunch premium payment for the shortened lunch.  (*Id.*)

**REQUEST FOR JUDICIAL NOTICE**

Ali requests the Court take judicial notice of California Industrial Welfare Commission Order No. 14-2001, which regulates wages, hours and working conditions in the agricultural occupations.  (Doc. 62.)  Courts may take judicial notice the California Industrial Welfare Commission's wage orders.  *See, e.g.*, *Schroeder v. Envoy Air, Inc.*, No. CV 16-04911-MWF-KS, 2016 WL 11520388, at *3 (C.D. Cal. Sept. 27, 2016).  Accordingly, Ali's request for judicial notice is GRANTED.

**EVIDENTIARY OBJECTIONS AND MOTIONS TO STRIKE**

Before addressing the merits of Ali's class certification motion, the Court considers the parties' evidentiary objections and motions to strike.

**A.  Setton Pistachio's Objections** (Doc. 67-1.)

In opposition to the class certification motion, Setton Pistachio objects to an isolated statement in the Declaration of Kevin T. Barnes, (Doc. 61-2), and to various exhibits on several grounds, including lack of foundation and hearsay.  At the class certification stage, "formalistic evidentiary objections" are disfavored and make "little common sense."  *Sali v. Corona Regional*

*Medical Center,* 909 F.3d 996, 1004 (9th Cir. 2019). The Court may "consider inadmissible evidence in deciding whether it is appropriate to certify a class." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 965 n.147 (C.D. Cal. 2015) ("Since a motion for class certification is a preliminary procedure, courts do not require strict adherence to the Federal Rules of Civil Procedure or the Federal Rules of Evidence.") (internal quotations omitted); *cf. Rodriguez v. Wal-Mart Assocs., Inc.*, No. 2:20-CV-07045-AB (KKx), 2022 WL 17882123, at *3 (C.D. Cal. Sept. 16, 2022) (overruling foundation, hearsay, and improper lay opinion objections to evidence at class certification stage). To the extent Setton Pistachio's objections are formalistic evidentiary objections, they are overruled for purposes of the instant motion.

**B. Ali's Evidentiary Objections and Motion to Strike**

1. <u>Evidentiary Objections to Declarations of Current Employees</u> (Doc. 72-2)

Ali objects and moves to strike the declarations of Setton Pistachio's current employees submitted in opposition to the motion for class certification. Ali argues that because all of Setton Pistachio's declarants are current employees, they are subject to coercion and intimidation and their testimony must be viewed with skepticism. (Doc. 72-2 at p. 2.) "[T]here is a "heightened potential for coercion" where absent class members and the defendant are in an employer-employee relationship." *Quezada v. Schneider Logistics Transloading & Distribution*, No. CV 12-2188 CAS DTBX, 2013 WL 1296761, at *4 (C.D. Cal. Mar. 25, 2013). To determine if a defendant employer's communications with prospective class-member employees are "sufficiently deceptive or coercive to warrant relief," a court may consider, among other things, "whether the employer adequately informed the employees about: (1) the details underlying the lawsuit, (2) the nature and purpose of the communications, and (3) the fact that any defense attorneys conducting the communications represent the employer and not the employee." *Id.* Ali's motion insinuates that Setton Pistachio may have coerced or intimidated witnesses, but Ali provides no supporting evidence to demonstrate that any pre-certification communications were deceptive or coercive. Wholesale rejection of competent evidence based upon speculation is not warranted. Accordingly, it is recommended that Ali's motion to strike be DENIED.

Ali also objects to various statements in employee declarations on grounds such as lack of

5

foundation, hearsay and improper opinion testimony.  As discussed above, these formalistic evidentiary objections are overruled for purposes of the instant motion.

    2. <u>Evidentiary Objections to Declaration of Janice Fowler</u> (Doc. 72-3)

  Ali objects and moves to strike the declaration of Janice Fowler, (Doc. 67-2), Setton Pistachio's office/human resources manager, on the same grounds as those for the declarations of current employees.  For the same reasons, Ali's objections are overruled, and it is recommended that Ali's motion to strike be DENIED.

    3. <u>Evidentiary Objections to Declaration of Anthony Raimondo</u> (Doc. 72-4)

  Ali objects to certain statements in the Declaration of Anthony Raimondo (Doc.67-3 at ¶¶ 1-10), counsel for Setton Pistachio, on various grounds, including lack of foundation, relevance, and improper lay opinion.  (Doc. 72-4.)  The Court has not relied on any of the specified statements in addressing the motion for class certification.  Accordingly, Ali's objections are overruled.

  **C.  Setton Pistachio's Objections to Ali's Reply and Additional Evidence** (Doc. 73)

  Setton Pistachio first objects that Ali's reply includes additional declarations that exceed the 10-page limit, depriving Setton Pistachio of any opportunity to respond except by way of objections.  (Doc. 73 at pp. 1-2.)  This objection is overruled.  Ali's reply memorandum does not exceed the 10-page limit.  Further, to the extent deemed necessary, Setton Pistachio was not precluded from requesting leave to file a surreply.

  Setton Pistachio next objects that Ali's reply "submits inappropriate objections to evidence that are beyond 'speaking" objections' . . . and mostly go to the weight of the evidence and not to admissibility."  (*Id.* at p. 2.)  Setton Pistachio contends that Ali's "speaking objections" should all be stricken.  Setton Pistachio does not refer the Court to any of Ali's specific objections.  The Court will not extend its limited resources combing the reply brief and accompanying materials to ascertain which, if any, objections should be stricken.  Accordingly, Setton Pistachio's objection is overruled.

  Setton Pistachio further argues that Ali is attempting to introduce new evidence in its reply that it failed to introduce in its initial Motion for Class Certification, particularly through the

1   Declaration of Michael Nourmand and the Declaration of Brian Kriegler, Ph. D.  Setton Pistachio

2   requests that these declarations and the attachments be stricken or disregarded by the Court

3   because Ali is not entitled to submit new or additional evidence in reply.  (Doc. 73 at pp. 2-3.)

4        "It is generally improper for a moving party to introduce new facts or different legal

5   arguments in a reply brief."  *Pena v. Taylor Farms Pac., Inc.*, 305 F.R.D. 197, 206 (E.D. Cal.

6   2015), order clarified sub nom. *Carmen Pena v. Taylor Farms Pac., Inc.*, No. 2:13-CV-01282-

7   KJM-AC, 2015 WL 12550898 (E.D. Cal. Mar. 30, 2015), and aff'd, 690 F. App'x 526 (9th Cir.

8   2017).  "New evidence submitted as part of a reply is improper because it does not allow the

9   defendant an adequate opportunity to respond." *Townsend v. Monster Beverage Corp.*, 303 F.

10  Supp. 3d 1010, 1027 (C.D. Cal. 2018) (quotation marks and citation omitted); *Ward v. Sutter

11  Valley Hosps.*, No. 2:19-CV-00581-KJM-AC, 2022 WL 2805965, at *5 (E.D. Cal. July 18, 2022)

12       Here, Ali contends that the "new" evidence submitted in support her reply directly

13  responds to arguments raised in Setton Pistachio's opposition.   Ali explains that Dr. Kriegler's

14  declaration in support of the reply "address[es] and respond[s] to the Declaration of Janice Fowler

15  in Support of Defendant's Opposition to Plaintiff's Motion for Class Certification, dated April 29,

16  2022."  (Doc. 74 at 2.)  Dr. Kriegler reportedly rebuts the declarant's contentions regarding Ali's

17  rounding claim and Setton Pistachio's time records.  (*Id.*) Likewise, attorney Michael

18  Nourmand's declaration reportedly rebuts Setton Pistachio's argument that class counsel has not

19  vigorously litigated this case.  (*Id.*)

20       The Court does not find it necessary to strike the declarations of Dr. Kriegler or Mr.

21  Nourmand.  Relevant here, the Court generally has not relied on these declarations with regard to

22  the time records or assertions regarding counsel's "vigorous litigation" of this case.  As a result, it

23  is not necessary to strike these declarations.  To the extent the Court has relied upon additional

24  evidence submitted in support of Ali's reply, a surreply also is not necessary.  Unless otherwise

25  noted, it is recommended that Setton Pistachio's motion to strike be DENIED.

26       Setton Pistachio's remaining objections are overruled.

27                          **MOTION FOR CLASS CERTICATION**

28       Plaintiff asks the Court to certify the following classes:

**Rounding Class**: All California-based hourly employees employed by Defendant during the time period from April 27, 2012 to the present to whom Defendant paid based on their rounded rather than actual hours worked;

**Labor Code §203 Class**: All California-based hourly employees employed by Defendant during the time period from April 27, 2013 to the present who were not paid all wages owed upon separation as a result of Defendant's rounding policy;

**Wage Statement Class**: All California-based hourly employees employed by Defendant during the time period from April 27, 2015 to the present to whom Defendant provided wage statements that did not comply with Labor Code §226 as a result of Defendant's rounding policy; and

**17200 Class**: All California-based hourly employees employed by Defendant during the time period from April 27, 2012 to the present to whom Defendant has engaged in unlawful, unfair and/or fraudulent business acts or practices in the form of Labor Code and Wage Order violations as a result of Defendant's rounding policy regarding payment of all wages, payment of final wages and proper wage statements.

(Doc. 61-1 at 9.)

### A. Legal Standard

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which imposes a two-step test for deciding whether a class may be certified. Under the first step, a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These requirements are "commonly referred to as the numerosity, commonality, typicality, and adequacy requirements." *Norris–Wilson v. Delta–T Group, Inc.*, 270 F.R.D. 596, 601 (S.D. Cal. 2010). If these requirements of Rule 23(a) are met, then the court considers whether the proposed class action is maintainable under Rule 23(b). *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). Relevant here, Rule 23(b)(3) states that a class action may be maintained if "the court finds questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

8

Plaintiff bears the burden of satisfying the elements of Rules 23(a) and 23(b)(3). *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23 is not a mere pleading standard. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("*Dukes*") (emphasis in original). When considering a motion for class certification, a court must conduct a "rigorous analysis" to determine "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350-51 (citation omitted); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011). A plaintiff "wishing to proceed through a class action must actually *prove*—not simply plead—that [the] proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3), and must carry their burden of proof before class certification." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir.), cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022) (internal quotations and citation omitted). Indeed, a plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Id.* at 665.

Ultimately, the decision of whether or not to certify a class is within the discretion of the court. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL–CIO CLC v. ConocoPhillips Co.,* 593 F.3d 802, 807 (9th Cir. 2010). "If a court is not fully satisfied that the requirements of Rules 23(a) and (b) have been met, the court should deny class certification." *Rodriguez v. Wal-Mart Assocs., Inc*., No. 2:20-CV-07045-AB (KKx), 2022 WL 17882123, at *3 (C.D. Cal. Sept. 16, 2022) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

**B.  California Law Regarding Unpaid Work Time**

Under California law, a plaintiff seeking to recover for unpaid work time bears the burden of proving he or she was engaged, suffered, or permitted to work without compensation.

9

1    *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 586 (2000). This standard can be met by

2    showing either (1) the employee was "subject to the control of the employer" or (2) the employee

3    was "suffered or permitted to work[.]" *Taylor v. Cox Commc'ns Cal., LLC*, 283 F. Supp. 3d 881,

4    886 (C.D. Cal. 2017) (quoting *Morillion*, 22 Cal. 4th at 582). Under the "control" prong of this

5    test, the "level of the employer's control over its employees, rather than the mere fact that the

6    employer requires the employees' activity, is determinative." *Morillion*, 22 Cal. 4th at 587. The

7    plaintiff must also show the employer "knew or should have known off-the-clock work was

8    occurring." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1051 (2012); *Utne v. Home Depot*

9    *U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL 1443338, at *5 (N.D. Cal. May 6, 2022).

10       **C. Discussion**

11          **1. Numerosity**

12       Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all of the class

13    members would be impracticable. Fed. R. Civ. P. 23(a). "'[I]mpracticability' does not mean

14    'impossibility,' but only the difficulty or inconvenience in joining all members of the class."

15    *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (quoting

16    *Advert. Specialty Nat'l Ass'n v. Fed. Trade Comm'n*, 238 F.2d 108, 119 (1st Cir. 1956)).  In

17    general, courts find the numerosity requirement satisfied when a class includes at least 40

18    members. *Pena*, 305 F.R.D. at 213 (citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir.

19    2010)); *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011).

20       Ali's motion states that Setton Pistachio employed 2,151 hourly non-exempt employees

21    from April 27, 2012, to December 2017, and there were approximately 560 direct hire hourly

22    employees as of September 2021.  Based on these numbers, Ali asserts that numerosity has been

23    met.  (Doc. 61-1 at p. 18.)  Setton Pistachio counters that Ali has failed to meet her burden to

24    show a sufficiently numerous class, as she has not included any admissible evidence

25    demonstrating there are enough *harmed* employees to justify class certification, which is the class

26    that Ali seeks to certify.

27       According to Setton Pistachio, Ali's own expert has shown that at least 17.1% of the

28    putative class sample either lost no time or gained time and were overpaid under the rounding

10

1    policy.  (Doc. 67.)  As Setton Pistachio's argument suggests, and as Ali has pointed out in her

2    reply, Ali's expert has presented evidence suggesting that 87.9% of the employees in the putative

3    class sample were harmed as a result of the rounding policy.  (Doc. 72 at p. 4; Doc. 61-2, Ex. 18,

4    Kriegler Decl. at ¶ 26.)   Ali therefore posits that applying this metric, then the proposed classes

5    include 1,783 individuals (2,151 hourly non-exempt employees x .829).  (Doc. 72. at p. 4.)

6    Based on this representation, the Court is inclined to find that this satisfies the numerosity

7    requirement of Rule 23(a)(1).  *See Perez-Funez v. Dist. Dir.*, 611 F. Supp. 990, 995 (C.D. Cal.

8    1984) (explaining that the exact size of the class need not be known so long as "general

9    knowledge and common sense indicate that it is large").

10         Setton Pistachio further argues that Ali cannot establish numerosity because she has failed

11   to account for how many of the allegedly harmed workers settled their claims with Setton

12   Pistachio pursuant to *Chindarah v. Pick Up Stix, Inc.*, 171 Cal. App. 4th 796, 798(2009).[3]  Setton

13   Pistachio reports that 984 employees accepted its offer of settlement, and it paid those 984

14   employees $465,740.50 in wages in exchange for full releases of liability.  (Doc. 67 at p. 10

15   ("Setton greatly reduced any potential putative class by offering a settlement to its employees."))

16   Setton Pistachio therefore argues that Ali has presented no evidentiary basis for the Court to

17   determine whether those 984 settlements fully encompass all workers who were even arguably

18   underpaid due to rounding.  Setton Pistachio also suggests that the only employees who did not

19   settle were former employees that could not be located, even after using a skip-trace attempt to

20   find them.  (Doc. 67 at p. 11.)

21         Ali replies that even accounting for the 984 releases, the class is still numerous, as there

22   would be at least 799 (1,783 proposed class members minus 984) putative class members.  (Doc.

23   72 at p. 4.)  The Court is concerned that Ali has neither accounted for employees that have settled

24   and released their claims nor demonstrated by a preponderance of the evidence that the proposed

25   classes meet the numerosity requirement.  Regardless of the precise number of class members, the

---

[3] *Pick Up Stix* is a California case holding that a defendant, sued in a class action for wage-and-hour

27   violations, may settle the claims with the individual putative class members before class certification. *Pick
     Up Stix*, 171 Cal. App. 4th at 803.

Court nonetheless accepts Ali's representations that the putative class is large and finds that the numerosity requirement is met. *Perez-Funez*, 611 F. Supp. at 995 (the exact size of the class need not be known so long as "general knowledge and common sense indicate that it is large.")

### 2. Typicality

In order to meet the typicality requirement, Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The purpose of Rule 23(a)(3) is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal quotation marks and citation omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted)).

Ali contends that the typicality requirement is met because she "possesses the same interest, suffered the same injuries, and alleges identical violations as the Putative Class Members." (Doc. 61-1 at p. 19.) Specifically, Ali asserts that she worked for Setton Pistachio as an hourly-paid employee during the class period and she "did not receive all wages owed as a result of Defendant's rounding policy, was not paid all final wages timely, and did not receive legally compliant wage statements." (*Id.* at pp. 19-20.)

Setton Pistachio counters that Ali's claims are atypical of the putative class members for two main reasons. First, Ali's work circumstances differed from the majority of Setton Pistachio's employees. Ali worked as a hand sorter, usually along a machined, conveyor belt assembly line where pistachios are inspected. (Fowler Decl. at ¶ 6.) Only 16% of employees are hand sorters, and the remaining 84% of employees work in various positions within departments

1   such as production, maintenance, pest control, quality assurance, and administration.  (*Id.* at ¶

2   10.)  Ali's work on a conveyor belt line required that she be at a specific location at a specific

3   report time, otherwise her entire work crew would not be able to start on time.  (Doc. 67-2, Ex.

4   28, Decl. of Maria Massey ("Massey Decl.") at ¶ 4.)  Other employees, such as mechanics or pest

5   control, had much more relaxed reporting time and starting time requirements.  (Doc. 67-2, Ex.

6   29, Decl. of Hans Paulmann at ¶ 4; Ex. 30, Decl. of Martha Magana at ¶¶ 4-5.)

7         The Court is not persuaded.  Typicality does not require a class representative for each job

8   category. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (rejecting the defendant's

9   argument in employment discrimination action that typicality required "clear documentation that

10  each job category had a class representative for each type of discrimination claim alleged");

11  *Moore v. Addus Healthcare, Inc.*, No. 19-CV-01519-HSG, 2021 WL 1022875, at *7 (N.D. Cal.

12  Mar. 17, 2021) (acknowledging that typicality does not require a class representative for each job

13  category).  "[U]nder the rule's permissive standards, representative claims are "typical' if they are

14  reasonably coextensive with those of absent class members; they need not be substantially

15  identical." *Staton*, 327 F.3d at 957 (citation omitted).  Although Plaintiff did not work in each of

16  the various departments and positions that are encompassed by the proposed classes, there is no

17  apparent dispute that Setton Pistachio's hourly workers and Ali were subject to the same rounding

18  policy.

19        Second, Setton Pistachio argues that Ali's claims are atypical because she has not worked

20  at Setton Pistachio since April 29, 2015.  Since April 29, 2015, significant changes reportedly

21  have been made to how and where employees clock in and out of work and how and where they

22  clock in for meal breaks. (Doc. 67 at p. 22.)  According to Setton Pistachio, during Ali's

23  employment, the clock for sorters was located inside the building and next to the sorting room.

24  Around March 2019, clocks were moved from various locations around the facility to the main

25  gate.  Time is now accounted for as soon as employees enter the premises, with employees

26  clocking in to work as soon as they arrive at the employee entrance gate.  (Doc. 67 at p. 23;

27  Fowler Decl. at ¶ 9 ("In March 2019, Setton moved multiple timeclocks from around the facility

28  and placed those timeclocks at the main entrance . . . Setton now has 12 time clocks outside of the

main entrance gate."). Again, Setton Pistachio's argument is not persuasive when assessing typicality. "Typicality refers only to the nature of the claim, as mentioned above, not to the quantity of violations or the specific facts surrounding each violation." *Alfred v. Pepperidge Farm, Inc.*, 322 F.R.D. 519, 539 (C.D. Cal. 2017), modified, No. LA CV14-07086 JAK (RZx), 2017 WL 5665019 (C.D. Cal. July 13, 2017) (citation omitted); *cf. Rodriguez*, 2022 WL 17882123, at *6 (indicating that "when analyzing typicality the focus is not on the specific facts of Plaintiff's claim, but rather on whether Plaintiff's claims are "reasonably coextensive with those of [the] absent [putative] class members"). Ali's claim is based on Setton Pistachio's rounding policy, which is common to the putative class members. Setton Pistachio has not presented any evidence that the rounding policy has changed, and thus, the policy challenged remains "typical" of the class. Accordingly, the Court finds Ali has satisfied the typicality requirement.

### 2.    Adequacy of Representation

Rule 23(a)(4) provides that the court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class." The two key inquiries are whether: (1) the named plaintiff and their counsel have any conflicts of interest with other class members; and (2) plaintiff and counsel will vigorously prosecute the action on behalf of the class. *Ellis*, 657 F.3d at 985.

Ali contends that the adequacy requirement is met. In particular, Ali avers that there is no evidence of antagonism between her and/or her attorneys on the one hand, and the putative class members on the other. Ali also indicates that even if there were, any putative class member will be afforded the opportunity to opt out of the classes. Ali additionally points out that her attorneys are experienced class action litigators and are devoted nearly exclusively to the prosecution of class actions such as this. (Doc. 61-1 at p. 20.)

Setton Pistachio argues that Ali is not an adequate class representative because she has acted with a lack of diligence to this point in the litigation. Setton Pistachio notes the years Ali spent challenging removal to this court by way of motion practice and asserts that Ali allowed the case to stagnate for six years before even seeking class certification. Setton Pistachio therefore

suggests that Ali and her counsel will not adequately represent the class.  (Doc. 67 at p. 24.)

The Court finds no apparent conflicts of interest between Ali, her counsel, and the proposed class members.  Although the Court questions whether Ali and her counsel have acted diligently in pursuing class certification by repeatedly seeking remand to state court, Ali timely filed her motion for class certification in compliance with the Court's Scheduling Order.  The Court therefore cannot conclude that Ali and her counsel will not diligently prosecute this action on behalf of the class.

### 3. Commonality and Predominance

The Court will consider the commonality prerequisite of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) together. *See*, *e.g.*, *Lemp v. Seterus, Inc.*, No. 2:18-cv-01313-TLN-KJN, 2022 WL 912960, at *2 (E.D. Cal. Mar. 29, 2022) ("Courts often consider predominance and commonality together."); *Wilson v. Pactiv LLC*, No. 5:20-CV-01691-SB-KK, 2021 WL 5818492, at *6 (C.D. Cal. Dec. 3, 2021) ("Because the Rule 23(b)(3) predominance inquiry subsumes the Rule 23(a)(2) commonality inquiry, and for the sake of efficiency," a court may "analyze[ ] commonality and predominance together in the context of each proposed class and subclass."), (citation omitted).

Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Although "any competently crafted class complaint literally raises common questions," commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50.  "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 350 (internal citations omitted).   A class claim "must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  In assessing commonality, a court's analysis may entail some overlap with the merits of the plaintiff's underlying claim, and class determinations generally involve "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351.

15

Under Rule 23(b)(3), the predominance requirement is similar to the Rule 23(a)(2) commonality requirement, but the standard is much higher. *Dukes*, 564 U.S. at 359; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997) (predominance criterion far more demanding that Rule 23(a)'s commonality requirement).  Rule 23(b)(3) requires that "the district court determine after rigorous analysis whether the common question predominates over any individual questions, including individualized questions about injury or entitlement to damages." *Olean*, 31 F.4th at 669.  "A district court is in the best position to determine whether individualized questions, including those regarding class members' injury, will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)."  *Id.* (internal quotations and citation omitted).

**Rounding Class**

Ali contends that Setton Pistachio implemented a uniform policy of rounding time-keeping entries to the nearest 15-minute increment to all time punches (beginning of shift, ending of shift, beginning of meal break, and ending of meal break) and that such policy resulted in class members being paid less than all hours they worked and denied them a full 30-minute lunch break.

California does not have a statute or regulation expressly addressing the permissibility of using a rounding policy, but state courts have followed the federal regulatory standard. *See See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 903 (2012) ("The policies underlying the federal regulation—recognizing that time rounding is a practical method for calculating work time and can be a neutral calculation tool for providing full payment to employees—apply equally to employee-protective policies embodied in California Labor law."). The relevant regulation states:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b).  "[A]n employer's rounding practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011) (citations omitted).

### Shift Rounding

An employer is permitted to adopt a rounding policy so long as it is "fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'" *See's Candy*, 210 Cal. App. 4th at 907 (quoting 29 C.F.R. § 785.48).

Ali contends that Setton Pistachio's rounding policy inures only to Setton Pistachio's benefit, and it is not a neutral rounding policy as applied to the beginning and ending of an employee's shift.[4]  Ali provides the declaration of its expert, Brian Kriegler, Ph.D., opining that 82.9% of putative class members were underpaid as a result of the rounding policy (21.91 hours per putative class member were underpaid, at an average of 3.44 minutes shift).  (Doc. 61-1 at p. 13; Doc. 61-2, Ex. 18, Kriegler Decl. at ¶ 26.)

Setton Pistachio does not dispute the existence of its rounding policy, but argues that Ali's theory fails because the policy is "unequivocally neutral on its face," as it grants up to seven minutes in favor of either the employee or Setton Pistachio, depending on when the employee clocked in or out for their shift.  (Doc. 67 at p. 12.)  The policy states: "Employees should not work or punch in more than seven (7) minutes before or seven (7) minutes after their shift." (Doc. 61-1 p. 11.)  Setton Pistachio's argument does not defeat a showing of commonality as the question of whether the policy is lawful and neutral on its face is suitable for resolution across the entire class.  To be lawful, a rounding policy must be "neutral, both facially and as applied." *Bebber v. Dignity Health*, No. 1:19-cv-00264-DAD-EPG, 2022 WL 4080956, at *5 (E.D. Cal. Sept. 6, 2022), quoting *Corbin v. Time Warner Ent.-Advance/Newhouse P'ship,* 821 F.3d 1069,

---

[4] Per Ali's expert, the net difference due to rounding is primarily attributed to pre-shift time. That magnitude is greater than both the net difference in meal period time and at the end of shifts. (Doc. 72-1, Kriegler Reply Decl. at ¶ 14.c.)

1    1076 (9th Cir. 2016).

2           Setton Pistachio next argues that Ali's class certification motion fails because individual

3    issues predominate over common ones, where the rounding policy for pre-shift, early clock-in

4    time is akin to a grace period.  According to Setton Pistachio, employees may clock-in early, but

5    cannot work before the scheduled start of their shift.  (Doc. 67 at p. 14.)  "[U]nder California law

6    a grace period (the time during which an employee punches in before his or her compensable pay

7    is triggered) is allowed if the employee is not working or is not under the employer's control."

8    *See's Candy*, 210 Cal. App. 4th at 909; *see also Silva v. See's Candy Shops, Inc.*, 7 Cal. App. 5th

9    235, 253, 212 Cal. Rptr. 3d 514, 530 (2016), disapproved of by *Donohue v. AMN Servs., LLC*, 11

10   Cal. 5th 58, 481 P.3d 661 (2021), (finding employer presented admissible, credible evidence that

11   its employees engaged only in personal activities during the grace period and were neither

12   working nor under See's Candy's control during this time; employees were permitted to

13   voluntarily clock in early or clock out late, and during this time they could (and did) engage

14   exclusively in personal activities, including leaving the premises to run quick errands, drinking

15   coffee, applying makeup, and making personal calls).

16          As to the question of whether employees were working, Setton Pistachio presents

17   evidence that its employees used the early clock in as a grace period, and during this time they

18   could engage in non-work activities, such as drinking coffee, socializing, using the restroom,

19   stowing their personal items, or tending to various personal needs.  (*See*, *e.g.*, Doc. 67-2, Ex. 10,

20   Decl. of Neldy Castaneda at ¶¶ 10-11 ("Often times, because I understand that time is rounded to

21   the nearest quarter hour, I clock in up to 7 minutes early so that I have time to put away my food I

22   bring from home and to go to the restroom.  During this 7-minute window before my shift, I

23   understand that I am free to go where I want to and not prohibited to exit the worksite if I wanted

24   to."); Ex. 12, Decl. of Guillermo Navarette ("There have been several days in which I clock in a

25   couple minutes prior to the start of my shift and put my food away and talk to coworkers.  In

26   many instances, I do not start actually working till 5 minutes after my work shift."); Ex. 15, Decl.

27   of Jose Martinez at ¶ 8 ("I clock in up to 7 minutes early so that I have time to drink my coffee

28   and speak to my lead or other co-workers . . . During the time I clock in to the time I actually

begin working, I will drink coffee, use the restroom, talk to the crew, and plan . .. what work I will be doing that day."); Ex. 19, Decl. of Arasely Camarena at ¶ 10 ("After clocking in, I make my coffee and prepare mentally on what needs to be done that day.  On several days, I finish doing my makeup at work after clocking in."); Ex. 22, Decl. of Juan Manuel Aguilar at ¶ 8 ("I clock in up to 7 minutes early so that I have time to decide what to do before my shift starts.  I sometimes drink a coffee, use the restroom, or speak to other co-workers."); Ex. 23, Decl. of Maria G. Flores at ¶ 8 ("Often times, because I understand that time is rounded to the nearest quarter hour, I clock in up to 7 minutes early so I have time to drink my coffee and use the restroom.").

Similarly, Setton Pistachio presents evidence that some employees engaged in a variety of non-work activities at the end of their shifts, but before clocking out, or clocked out seven minutes or less before their shift ending time.  (Doc. 67 at pp. 19-20; Doc. 67-2, Ex. 9, Decl. of Estevan Toledo at ¶ 9 ("Sometimes, at the end of the day, I will clock out 7 minutes early before the end of my shift if my work is down and if the next crew for the second shift is at the site."); Ex. 20, Decl. of Jesus Lopez at ¶ 10 ("On many days, at the end of the day, I have clocked out up to 7 minutes at the end of my shift because I know the company will round the time up to show that I clocked out at 3:30 p.m.); Ex. 21, Decl. of Juan Bravo at ¶ 10 ("There have been numerous occasions, at the end of the day, that I have clocked out up to 2 minutes early at the end of my shift.  Most of the day I have done this is because I had appointments after work that I needed to attend."); Ex. 22, Decl. of Juan Manuel Aguilar at ¶ 10 ("Sometimes, at the end of the day, I will clock out 2 minutes early at the end of my shift if the work is done.   I know the company rounds up my time when I do this and I do not think it is an issue.")

In contrast, Ali argues that Setton Pistachio maintained policies restricting employees from engaging in private pursuits while clocked in, such as making telephone calls only in case of emergency and with permission of a supervisor or a preclusion from smoking, eating, or drinking in any production areas. (Doc. 72 at pp. 6-7.)  Ali also submits testimony that production employees are required to wear a hairnet, helmet, glasses, gloves, submit to Setton Pistachio's sanitation department which requires employees, one at a time, to wash and dry their hands and

shoes, and wait in line for the lead to assign them to a production line, and that they are not permitted to drink coffee in the production area once they are on the clock.  (Doc. 72 at p. 7; see, e.g., Doc. 72-1, Ex. 26, Flores Depo., 27:19-24 (confirming she was not allowed to smoke, eat, or drink while in the production area); 42:12-24 (confirming that she was not allowed to drink coffee in the production area when clocked in early and had to wear a hairnet in the production area); 48:9-13 (confirming when clocked in on the production floor waiting for her shift to start she is wearing her hard hat and hair net); Ex. 29, Rodriguez Depo., 31:12-37:22 (confirming she washes her shoes and hands in the sanitation department, then waits in line for her foreman to tell her where to work and she wears a hairnet and helmet); 64:13-65:19 (same); 67:1-7 (puts gloves on once assigned to a line); 77:4-10 (confirming she can only make personal calls in an emergency with permission of her supervisor when on the clock); 83:23-84:18 (familiar with company policy that employees cannot eat or drink in the production department).  She also presents witness testimony that shipping employees are required to obtain their equipment, including but not limited to scanners, and conduct the check list for their forklifts and meet with their lead to determine what orders need to be filled for the day, and that once they are clocked in, they can use their cellphone only during a rest break or in an emergency with the permission of a supervisor.  (Doc. 72 at p. 7; see, e.g., Doc. 72-1, Ex. 28, Toledo Depo., 17:5-11 (time clock at main entrance); 21:9-27:20 (confirming that he checks out a scanner and conducts check list for forklift before beginning shift, meets with lead); 39:22-41:11 (confirming that outside of rest breaks, while on the clock, he can make personal phone calls only in case of an emergency with the permission of his supervisor).

        Based on the contrasting evidence, the Court finds that the question of whether employees were working is not subject to common proof but instead will require individualized inquiries into whether employees were working during the few minutes between when they clocked in and when their shift started (or when their shift ended and they clocked out).  *See Morgan v. Rohr, Inc.*, No. 20-CV-574-GPC-AHG, 2022 WL 974334, at *10 (S.D. Cal. Mar. 31, 2022) (concluding individual questions predominated over the common ones because determining whether employees were underpaid would require discussion with each person to determine "which

1   employees were 'actually working' after they clocked in but before their shift started" and

2   therefore lost compensable time); *Wilson*, 2021 WL 5818492, at *7 ("The question whether

3   employees were working is not subject to common proof but instead will require individualized

4   inquiries into whether employees were working during the few minutes between when they

5   clocked in and when their shift started.").

6        Ali's arguments and evidence underscore that individual issues predominate on the

7   question of whether employees are in fact working during the few minutes between when they

8   clocked in and when their shift started.  This is particularly true given evidence of the variations

9   for jobs in different departments.  Further, reference to Setton Pistachio's polices alone says

10  nothing about pre-shift activities:  that employees are not allowed to eat or drink in certain areas

11  or must wear certain gear says nothing about whether employees could engage in personal

12  pursuits prior to their shift start time.  Nor does the policy restricting phone calls.  Moreover, the

13  evidence submitted by Setton Pistachio belies the suggestion that employees could not engage in

14  personal pursuits in the period of time prior to shift start. The parties have presented conflicting

15  evidence as to whether employees were working between when they clocked in and when their

16  shift started. Thus, the evidence demonstrates that individual issues predominate.

17       The Court acknowledges Ali's declaration, which states:  "When I would clock in for the

18  day, I would immediately begin working and continue to work all of my scheduled hours . . . ."

19  (Doc. 61-2, Ex. 17, Decl. of Lilia Ali at ¶ 4.)  However, Ali worked as a hand sorter, on a

20  machined conveyor line, and could not begin work until the machines/conveyors were turned on.

21  (Massey Decl. at ¶ 4 ("all the workers must be in place before the sorting machines can be turned

22  on"); Doc. 67-2, Ex. 16, Decl. of Irma Ramirez ("Ramirez Decl.") at ¶ 8 ("We are not allowed to

23  start work until our shift begins and in fact cannot begin working prior to 6:00 a.m. because we

24  all begin working when the machines turn on, which occurs at exactly 6:00 a.m.").  The contrast

25  between Setton Pistachio's sorting process and Ali's own declaration demonstrates that individual

26  inquiries predominate.  *See's Candy*, 210 Cal.App.4th at 910–11 ("To the extent an employee

27  claims that he or she was not properly paid [for the time during which an employee punches in

28  before his or her compensable pay is triggered], this claim raises factual questions involving

1   whether the employee was in fact working and/or whether the employee was under the

2   employer's control during the grace period.")

3       Ali also argues that the facts of this case are analogous to *Sali v. Corona Regional*

4   *Medical Center*, 909 F.3d 996 (9th Cir. 2018), in which the Ninth Circuit rejected a similar

5   argument that employees are not working when engaging in personal activities.  (Doc. 72 at p. 5-

6   6.)  In *Sali,* the Ninth Circuit considered certification of a rounding-time class and found that the

7   district court erred by assuming that the only question to be decided was whether employees

8   engaged in work activities even if they were not required to do so.  *Id.* at 1010.  The *Sali* court

9   identified that under California law, time is compensable when an employee is working or under

10  the control of his or employer.  Accordingly, employees were also actually working if they were

11  subject to the employer's control even if they were not engaging in work activities.  In so

12  identifying, the *Sali* court determined that the district court failed to consider whether the

13  employees could establish on a classwide basis that they were subject to the employer's control,

14  such as if they were required to remain on premises during the grace period, even if they were not

15  always engaged in work-related activities during that time.  *Id.*  The Ninth Circuit indicated that

16  the "employer control" question required "an employer-focused inquiry into whether [the

17  employer] had a policy or practice that restricted [employees] in a manner that amounted to

18  employer control during the period between their clock-in and clock-out times and their rounded

19  shift-start and shift-end times" and that determination of this question did not depend on

20  individualized factual questions.  *Id.* at 1010-11.

21       "It is true that an employee who is under an employer's control is considered working

22  irrespective of his or her actual activity—'for example, if [he or she] were required to remain on

23  the ... premises during that time.'" *Wilson*, 2021 WL 5818492, at *7 (quoting *Sali*, 909 F.3d at

24  1010.)

25       However, this case is distinct from the example of control cited in *Sali*, i.e., employees

26  required to remain on the premises during the grace period.  909 F.3d at 1010.  Setton Pistachio

27  presents evidence that while employees were asked to remain on the premises once they had

28  clocked in, they were not prohibited from leaving the premises.  (*See*, *e.g.*, Doc. 67-2; Ex. 10,

Decl. of Neldy Castaneda at ¶ 11 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite if I wanted to."); Ex. 11, Decl. of Kathy Kennel at ¶ 11 (" I understand that I am free to go where I want to and not prohibited to exit the building prior to the beginning of my work shift."); Ex. 13, Decl. of Modesto Gonzalez at ¶ 9 ("In fact, the company has informed us that we are not allowed to work prior to the start of our work shift.  An employee can do whatever they want during that window during that 7 minute window."); Ex. 14, Decl. of Jocelyn Evans at ¶ 10 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite if I wish."); Ex. 16, Ramirez Decl. at ¶ 8 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exist the worksite or go to my car."); Ex. 17, Decl. of Rosa Villalobos at ¶ 10 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite or go to my car if I wish."); Ex. 18, Decl. of Catalina Rodriguez at ¶ 10 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and have never been told that I could not exit the worksite or go to my car if I wished to.");  Ex. 23, Flores Decl. at ¶ 9 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite or go to the car.")

In her reply, Ali submits evidence that employees are required to clock out when they leave the premises for personal reasons, such as going to their cars, and that once they clock in, they are required to remain on Setton Pistachio's premises.  (Doc. 72 at p. 6; *see*, *e.g.*, Doc. 72-1, Ex. 26, Flores Depo., 25:6-23 (aware of policy that requires employees to punch out when they leave the premises or the production for personal reasons; Ex. 27, Navarette Depo., 13:7-14:11 (same); Ex. 28, Toledo Depo., 18:2-24 (confirming he must clock out when he leaves the premises for personal reasons).  Again, the fact that the parties have presented conflicting evidence suggests that individualized inquiries predominate.

Meal Breaks

Setton Pistachio applies a rounding policy to meal break clock-outs and clock-ins. (Fowler Decl. at ¶ 3.)  Under California law, the practice of rounding time punches for meal

1  periods has been found inconsistent with the purpose of the Labor Code provisions and the IWC

2  wage order. *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 68, 481 P.3d 661, 668 (2021).

3  However, Setton Pistachio has presented evidence demonstrating that the rounding policy, as

4  applied to meal breaks, operates only to the employees' benefit.  As explained by Setton

5  Pistachio, if an employee clocks back into lunch after taking a 34-minute lunch, their lunch time

6  is rounded back to 30 minutes, and the four minutes is added to their compensable time.  (Doc.

7  67-2, Fowler Decl. at ¶ 3.)  To ensure that employees take their full 30-minute meal break, the

8  clocks do not allow employees to clock back in before their 30-minute lunch break is complete.

9  (*Id.*)  If an employee bypasses the system, by clocking back in after the meal break, using a

10  different clock than where they clocked out, then the machine will allow the employee to clock

11  back in before the 30-minutes, but the clock-in will be flagged to notify payroll that a lunch

12  premium needs to be paid.  (*Id.* "[I]f those less than 30 minute lunch clock ins are flagged by the

13  clock, [] [Fowler] or other payroll employees review those times and make a lunch premium

14  payment for the shortened lunch.")

15      Ali does not appear to account for this practice or address it in the reply brief.  The only

16  substantive reference to lunch breaks is a statement confirming that "meal periods are on average

17  31 minutes long."  (Doc. 72 at 9.)  Moreover, Ali has failed to meet its burden to demonstrate

18  commonality and predominance because individualized inquiries would be necessary to

19  determine if employees clocked out and in for meal periods at the same or different time clocks, if

20  clock-ins before the 30-minutes were flagged, or if, where needed, the meal periods were adjusted

21  by payroll for premium payments.

22                                    **Derivative Classes**

23      Ali's remaining classes are derivative and based on certification of the rounding class.  As

24  the Court intends to recommend that Ali's motion to certify the rounding class be denied, it is

25  unnecessary to address the derivative classes.

26                        **CONCLUSION AND RECOMMENDATION**

27      Because the Court finds that Ali fails to satisfy the commonality and predominance

28  requirements of Rule 23(a)(2) and Rule 23(b)(3) for the proposed classes, it will recommend that

Ali's motion for class certification be denied.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

     1.  Ali's motions to strike (Docs. 72-2 and 72.3) be DENIED;

     2.  Setton Pistachio's motion to strike (Doc. 73) be DENIED; and

     3.  Ali's motion for class certification (Doc. 61) be DENIED.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 9, 2023**         /s/ *Barbara A. McAuliffe*

                                    UNITED STATES MAGISTRATE JUDGE