UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIA ALI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SETTON PISTACHIO OF TERRA BELLA, INC., a California corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 1:19-cv-00959-JLT-BAM<br><br>ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>(Docs. 61, 77) |

Lilia Ali filed suit against a pistachio grower and processor, Setton Pistachio of Terra Bella, Inc., alleging that Setton Pistachio violated California wage-and-hour laws by enforcing an unlawful rounding policy that failed to compensate hourly employees for all hours worked. Ali filed a motion for class certification, seeking to certify a class consisting of "[a]ll California-based hourly employees employed by Defendant during the time period from April 27, 2012 to the present to whom Defendant paid based on their rounded rather than actual hours worked; which was referred to the assigned magistrate judge for issuance of findings of recommendations," ("Rounding Class"), as well as several classes premised upon theories of liability that are derivative of the Rounding Class. (*See* Doc. 60-1 at 9.) The parties also filed various evidentiary objections. (*See* Docs. 72-2, 72-3, 73.)

On February 9, 2023, the assigned magistrate judge issued findings and recommendations

1

1  recommending as follows: (1) Ali's motions to strike (Docs. 72-2 and 72-3) be denied; (2) Setton
2  Pistachio's motion to strike (Doc. 73) be denied; and (3) Ali's motion for class certification be
3  denied. (Doc. 77.) The findings and recommendations were served on the parties and contained
4  notice that any objections thereto were to be filed within fourteen (14) days after service. (*Id.*) On
5  February 23, 2023, Ali filed objections and a request to stay this matter pending a ruling from the
6  California Supreme Court. (Doc. 78.) Setton Pistachio filed a response to the objections and
7  request to stay on March 9, 2023. (Doc. 79.)

8  According to 28 U.S.C. § 636 (b)(1)(c), this Court has conducted a *de novo* review of the
9  case. Having carefully reviewed the entire file, including the objections, the Court finds that the
10 findings and recommendations are supported by the record and proper analysis in part, but departs
11 from the findings and recommendations in one respect, which warrants granting the motion for
12 class certification in part.

13 Ali raises two primary objections. First, Ali complains that the findings and
14 recommendations considered only whether employees were working once they clocked in, not
15 whether they were under the control of Setton Pistachio. (Doc. 78 at 7–15.) This objection is not
16 well founded. Plaintiff is correct that employer control can serve as a pathway to liability in a
17 case like this. As the Ninth Circuit explained in *Sali v. Corona Regional Medical* Center, 909
18 F.3d 996, 1010 (9th Cir. 2018):

19 > California's compensable-time standard encompasses two categories
20 > of time. First, time is compensable if an employee is "under the
> control" of his or her employer, whether or not he or she is engaging
21 > in work activities, such as by being required to remain on the
> employer's premises or being restricted from engaging in certain
22 > personal activities. Second, time is compensable if an employee "is
> suffered or permitted to work, whether or not required to do so."

23 (internal citations omitted). But the findings and recommendations expressly considered the issue
24 of employer control, distinguishing this action from *Sali* on that issue. (*See* Doc. 77 at 22–23.)

25 More persuasively, Ali objects to the magistrate judge's application of *Sali* to the record.
26 (Doc. 78 at 11–12.) The Court agrees with Plaintiff in part. As to the question of whether
27 employees were in fact working, and therefore whether they were "suffered or permitted to
28 work," the magistrate judge correctly concluded that individualized determinations would

2

predominate the question of whether employees did in fact perform work during the few minutes between when they clocked in and when their shift started. (Doc. 77 at 21.) Plaintiff does not seriously contest this. Plaintiff *does* directly contest the magistrate judge's findings on the employer control theory of liability. *Sali*, 909 F.3d at 1010. Per *Sali*, the "employer control" question "necessarily requires an employer-focused inquiry into whether [the employer] had a policy or practice that restricted [the employees'] in a manner that amounted to employer control during the period between their clock-in and clock-out times and their rounded shift-start and shift-end times." *Id*. *Sali* specifically indicated that control could be shown where an employee is "required to remain on the employer's premises or [is] restricted from engaging in certain personal activities." *Id*.

Defendant's HR Manager testified at deposition that there was a company-wide policy that prohibited employees from leaving the premises once they were clocked in:

> Q . . . And once somebody clocks in, are they free to leave the premise or must they stay on the premises?
>
> A Well, we ask that they not leave the premises ·if they are clocked in.· But we –
>
> Q So once – I'm sorry. Go ahead.
>
> A But we don't have actual control of that.
>
> Q Understand. ***But it's the company's policy and practice once an employee clocks in to start their workday, they are required to remain on premises; correct***?
>
> MR. MILLER: I'm just going to object as vague and ambiguous.
>
> THE WITNESS: ***I would say that is correct.***

(Doc. 61-2 at 70–71 (emphasis added).)

The magistrate judge thoughtfully reviewed the conflicting evidence on the existence of such a policy as follows:

> Setton Pistachio presents evidence that while employees were asked to remain on the premises once they had clocked in, they were not prohibited from leaving the premises. (*See, e.g*., Doc. 67-2; Ex. 10, Decl. of Neldy Castaneda at ¶ 11 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite if I wanted to."); Ex. 11, Decl. of Kathy Kennel at ¶ 11 ("I understand that I am free to go where I want

3

> to and not prohibited to exit the building prior to the beginning of my work shift."); Ex. 13, Decl. of Modesto Gonzalez at ¶ 9 ("In fact, the company has informed us that we are not allowed to work prior to the start of our work shift. An employee can do whatever they want during that window during that 7 minute window."); Ex. 14, Decl. of Jocelyn Evans at ¶ 10 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite if I wish."); Ex. 16, Ramirez Decl. at ¶ 8 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exist the worksite or go to my car."); Ex. 17, Decl. of Rosa Villalobos at ¶ 10 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite or go to my car if I wish to."); Ex. 18, Decl. of Catalina Rodriguez at ¶ 10 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and have never been told that I could not exit the worksite or go to my car if I wished to."); Ex. 23, Flores Decl. at ¶ 9 ("During this 7-minute window before my shift, I understand that I am free to go where I want to and not prohibited to exit the worksite or go to the car.")
>
> In her reply, Ali submits evidence that employees are required to clock out when they leave the premises for personal reasons, such as going to their cars, and that once they clock in, they are required to remain on Setton Pistachio's premises. (Doc. 72 at p. 6; see, e.g., Doc. 72-1, Ex. 26, Flores Depo., 25:6-23 (aware of policy that requires employees to punch out when they leave the premises or the production for personal reasons; Ex. 27, Navarette Depo., 13:7-14:11 (same); Ex. 28, Toledo Depo., 18:2-24 (confirming he must clock out when he leaves the premises for personal reasons).

(Doc. 77 at 22–23.) The findings and recommendations concluded that this "conflicting evidence suggests that individualized inquiries predominate." (*Id*. at 23.) On this narrow point, the Court departs from the findings and recommendations, because *Sali* calls for an "employer-focused" inquiry into the issue of control. The fact that some employees may not have known of the company policy or had a subjective understanding of the policy that differed from the HR Manager's own description of the policy creates a dispute of fact, but *not one that requires an individualized determination related to liability*, and not in any way that would predominate over general/global determinations. Though testimony from various employees regarding their subjective understandings *might* be relevant to establish or refute the existence of a policy or practice, whether there was a policy or practice is capable of global determination as to the entire class. In other words, the employer-focused question of whether such a policy or practice existed would only need to be established once, not re-examined in relation to each potential class

4

member's situation. For this reason, the Court believes that certification is appropriate as to the employer control theory of liability only.

The findings and recommendations correctly narrow this case in another way. As the findings and recommendations point out, Plaintiff contends generally that Defendant applied rounding time-keeping practices to both beginning of shift/ending of shift timekeeping and to beginning of meal break/ending of meal break timekeeping. (Doc. 77 at 16.) However, Setton Pistachio presented evidence demonstrating that the rounding policy, as applied to meal breaks, operates only to the employees' benefit.[1] (*Id*. at 24 ("If an employee bypasses the system, by clocking back in after the meal break, using a different clock than where they clocked out, then the machine will allow the employee to clock back in before the 30-minutes, but the clock-in will be flagged to notify payroll that a lunch premium needs to be paid.").) Plaintiff did not account for this practice in its briefing, so the magistrate judge concluded that Ali failed to meet its burden with respect to class certification as to this species of rounding claim. (*Id*.) Plaintiff did not address this specific issue in her objections, and the Court finds the magistrate judge's reasoning on this point to be correct.

In sum, because individualized determinations predominate as to liability premised upon whether employees were in fact working, the Rounding Class claims may only proceed on the theory of employee control. Relatedly because there is no evidence of harm caused by any rounding at meal breaks, the Rounding Class will be certified only as to start of shift/end of shift timekeeping. The derivative classes will be limited similarly. The Court leaves for another day the question of whether the classes need to be formally re-defined to conform to this ruling.

Considering the above conclusions, and the fact that Plaintiff's substantive objections focus on the "control" prong of *Sali*, the Court finds it unnecessary to address Plaintiff's challenge to the magistrate judge's consideration of the employee declarations. Relatedly, because it is unclear whether Plaintiffs will still wish to stay this case given the Court's ruling herein, the Court will denies without prejudice Plaintiff's request to stay the matter in light of the

---

[1] "[A]n employer's rounding practices comply with [the relevant law] if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." *Alonzo v. Maximus, Inc*., 832 F. Supp. 2d 1122, 1126 (C.D. Cal. 2011) (citations omitted).

California Supreme Court's grant of review in *Camp v. Home Depot U.S.A., Inc.* 84 Cal.App.5th 638 (2022). Accordingly,

1. The findings and recommendations issued on February 9, 2023 (Doc. 77) are **ADOPTED IN PART**.
2. Ali's motions to strike (Docs. 72-2 and 72-3) are **DENIED**.
3. Setton Pistachio's motion to strike (Doc. 73) is **DENIED**.
4. Ali's motion for class certification (Doc. 61) is **GRANTED IN PART AND DENIED IN PART AS SET FORTH ABOVE**.
5. Ali's request to stay is **DENIED WITHOUT PREJUDICE**.
6. The matter is referred to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   **March 28, 2023**

UNITED STATES DISTRICT JUDGE